IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER ROUNDS,                                           3:12-cv-00342-MA

                 Plaintiff,              OPINION AND ORDER

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

TIM D. WILBORN
P.O. Box 370578
Las Vegas, Nevada 89137

      Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

KATHRYN ANN MILLER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington 98104

      Attorneys for Defendant

MARSH, Judge

Plaintiff, Heather Rounds, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on March 10, 2009, alleging disability due to depression, schizophrenia, social phobias, learning disabilities, cognitive disorder, and recurring headaches. Tr. 160. Her application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on August 6, 2010, at which plaintiff was represented by counsel and testified. Tr. 35-82. David R. Rullman, M.D., was present throughout the hearing and testified as a medical expert.[1] Vocational Expert (VE) Paul Morrison was also present throughout the hearing and testified.

On September 3, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 21-30.

---

[1] Dr. Rullman's name appears as "Dr. Roman" in the hearing transcript. This appears to be a typographical error, as Dr. Rullman's resume indicates the correct spelling of his name. Tr. 113.

After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

## FACTUAL BACKGROUND

Born on July 10, 1986, plaintiff was 22 years old on the date of her application and 24 years old on the date of the hearing. In addition to her hearing testimony, plaintiff submitted an Adult Function Report. Tr. 166-81. Plaintiff's roommate, Gavin Lipscomb, submitted a Third Party Function Report. Tr. 182-89. In addition, Gary Davidson, plaintiff's representative in the disability claim process, submitted a brief statement of his opinion of plaintiff's disability. Tr. 206.

On January 28, 2009, Molly C. McKenna, Ph.D., conducted a Comprehensive Neuropsychological Administrative Examination, and submitted an evaluation. Tr. 261-79. In addition, Joshua J. Boyd, Psy.D., reviewed plaintiff's records and submitted a Mental Residual Functional Capacity Assessment. Tr. 303-06.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of

jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date, March 10, 2009. See 20 C.F.R. § 416.971 *et seq.*; Tr. 23.

At Step Two, the ALJ determined that plaintiff's major depressive disorder; social phobia; pervasive developmental disorder, not otherwise specified; and cognitive disorder, not otherwise specified were severe medically determinable impairments. See 20 C.F.R. § 416.921 *et seq.*; Tr. 23-24.

At Step Three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 416.920(d), 416.925, 416.926; Tr. 24-25.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but can perform only one- to two-step tasks with no public contact, no teamwork, and limited coworker contact. Tr. 25-28.

At Step Four, the ALJ determined that plaintiff had no past relevant work. See 20 C.F.R. § 416.965; Tr. 28.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Kitchen Helper, Hand Packager, and Recycler/Reclaimer. See 20 C.F.R. § 416.969; Tr. 29-30.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff argues that the ALJ erred in five ways.   First, plaintiff maintains that the ALJ improperly rejected her testimony. Second, plaintiff argues that the ALJ erred in improperly rejecting the opinions of Drs. McKenna and Boyd.   Third, plaintiff asserts that the ALJ erred in failing to include plaintiff's fibromyalgia as a medically determinable impairment at Step Two because the ALJ failed to fulfill his duty to develop the record.   Fourth, plaintiff submits that the ALJ erred in rejecting the lay witness statements of Gavin Lipscomb and Gary Davidson.  Finally, plaintiff argues that the Step Five finding was not supported by substantial evidence because the vocational hypothetical did not contain the limitations included in the allegedly improperly rejected evidence, and, even if the vocational hypothetical was sufficient, the jobs cited by the ALJ are not available under that hypothetical.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.   Rejection of Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is

unpersuasive." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

In her Function Report, plaintiff exclusively listed limitations based on her mental impairments. Tr. 166-73. Plaintiff reported that her conditions affected her memory, concentration, understanding, and abilities to complete tasks, follow instructions, and get along with others. Tr. 171. Plaintiff stated that her daily routine was to wake up, feed her "fish, cats and kid," occasionally eat breakfast, use the computer for "quite a while," listen to music, spend time with her daughter, pet and talk to her cats, talk to her roommate, look out the window at the trees, occasionally go to the park, put her daughter to bed, and then stay up using the computer until late in the night. Tr. 166. Plaintiff additionally reported that she has trouble sleeping. Id. Plaintiff stated that she often forgets to eat, shower, or brush her teeth. Tr. 167. Plaintiff reported that she can engage in most cleaning activities, including sweeping,

vacuuming, washing the floors and dishes, and doing laundry, but that it takes her all day to clean, and somebody has to "constantly complain about a mess" for her to notice. Tr. 168. Plaintiff stated that her only social activities are to talk with her daughter, roommate, mother, and a "couple online people," and to play a board game with her daughter. Tr. 170. Plaintiff reported that to go out of the house she needs somebody that she trusts to accompany her. Id. Plaintiff also noted that she has "always been pretty bad with money," not knowing how much change she is supposed to receive or how much money to give to a cashier. Id.

At the hearing, plaintiff stated that her fibromyalgia causes pain in her back, shoulders, and neck that is typically moderate, but can occasionally become severe. Tr. 60-61. Plaintiff testified that she can still move around, but that she has severe pain that causes difficulty functioning three to six days per month. Id. Plaintiff stated that she has difficulty lifting and carrying heavy objects, and that her fibromyalgia symptoms worsen in cold weather. Tr. 65. In addition, plaintiff testified that her fibromyalgia caused fatigue that contributes to her lack of functionality. Tr. 65-66. Plaintiff additionally testified that she frequently has an upset stomach. Tr. 56-57.

The ALJ rejected plaintiff's subjective testimony because her alleged limitations are inconsistent with the greater level of functionality reflected in her medical records, plaintiff has been

uncooperative with treating sources concerning the use of medications and therapy, and because the record indicates plaintiff only accesses medical and psychological resources when she has a secondary gain motivation, but otherwise has shown little interest in treatment. Tr. 26-27. I conclude that these reasons together amount to clear and convincing reasons for rejecting plaintiff's testimony, and are supported by substantial record evidence.

The ALJ reasonably found that the medical record showed a greater level of functionality and potential functionality than plaintiff alleged. Notably, plaintiff reported to Dr. McKenna that "[s]he believes she is capable of working, but prefers to avoid social contact, if possible." Tr. 262. As the ALJ noted, plaintiff told Dr. McKenna that "[s]he spends a typical day volunteering at a Muscular Dystrophy charity, attending Project Enterprise at the PCC North Metro DHS Office, and working on her resume." Id. In addition, Dr. McKenna noted that, "[d]espite her discomfort in social communications, [plaintiff] reports multiple positive relationships with others, including several romantic relationships and close friends." Id. As the ALJ noted, plaintiff reported to Dr. McKenna that she is "independent for all activities of daily living, including meal preparation, cleaning, laundry, and managing finances." Tr. 263. The ALJ's finding that plaintiff's testimony was inconsistent with statements contained in the medical record is supported by substantial evidence in the record, and

constitutes a compelling reason to reject plaintiff's subjective symptom testimony.

The ALJ also reasonably found that plaintiff was uncooperative with many of her treating medical and psychological providers. An inadequately explained failure to seek or comply with medical treatment is a proper basis upon which an ALJ may discredit a claimant's testimony. Fair v. Bowen, 885 F.3d 597, 603 (9th Cir. 1989).

In a February of 2009 follow up to Dr. McKenna's evaluation, plaintiff indicated that "[s]he is not interested in continuing treatment as she does not get any benefit from it." Tr. 270. Later in 2009, plaintiff saw Jessica M. Harrison, LCSW, and Sheryl A. Hedges, PMHNP, on a few occasions. On April 3, 2009, plaintiff presented to Ms. Hedges to initiate treatment, and, after demonstrating several odd behaviors, reported that she would pick up prescribed medication from the pharmacy, but may not take it. Tr. 285-86. On April 7, plaintiff met with Ms. Harrison, and reported that she had a depressed mood, but was "hesitant to seek out assistance in treating her depression." Tr. 285. At a follow up appointment on April 16, Ms. Harrison noted odd mannerisms, and that plaintiff would benefit from therapy "given her reluctance to utilize medication therapy." Tr. 284. The next week, Ms. Hedges again noted plaintiff's reluctance to take medication, and stated that counseling was the best treatment option. Tr. 283. On August

3, however, Ms. Harrison reported that plaintiff had "some disinterest in therapy, but says 'I guess I'll give it a try for now,'" and that plaintiff "does not want to take medications," because she is skeptical about them. Tr. 282. It does not appear plaintiff saw Ms. Harrison or Ms. Hedges again. In addition, with the exception of a relatively brief period of counseling in relation to regaining custody of her daughter in 2004 and 2005, the record is devoid of any treatment for any mental or physical conditions before plaintiff applied for disability. Tr. 234-49. The ALJ reasonably discounted plaintiff's credibility because she was not cooperative with medical providers.

Finally, the ALJ reasonably discredited plaintiff's testimony because plaintiff appeared to only seek medical treatment when she had a secondary gain motive to do so, such as regaining custody of her daughter, receiving a letter to allow her to keep her cat, or obtaining documentation for her disability claim. In 2004 and 2005, plaintiff underwent two evaluations for purposes of regaining custody of her daughter. Tr. 234-49. On March 23, 2009, plaintiff stated that she was seeking treatment because she was mainly interested in receiving a letter to "keep [her] two cats." Tr. 286. In August of 2009, plaintiff began her most consistent period of therapy because she was "seeking treatment to have documentation for a disability claim." Tr. 364. While plaintiff consistently continued this course of therapy at LifeWorks NW, she again

restated on December 17, 2009, that she "came for counseling originally because she has applied for SSI." Tr. 353.

In addition, the March 23, 2009 appointment is the first instance of an appointment with a physical medical treating source, although most of the chart note discusses plaintiff's psychological difficulties and ultimately resulted in the referral to Ms. Hedges. Tr. 286-88. The next treatment reference from a treating source for plaintiff's alleged physical ailments does not appear until March 12, 2010, which is the earliest dated finding of fibromyalgia in the record. Tr. 317. All of these encounters took place after plaintiff applied for disability benefits on March 10, 2009.

Some of plaintiff's secondary motivations for seeking treatment are understandable. Nonetheless, the fact that their associated treatment constitutes the overwhelming majority of the treating medical record in this case supports the ALJ's finding that plaintiff's primary motivation for seeking medical and psychological resources were reasons other than treating her underlying medical and psychological conditions. The ALJ's finding in this respect is supported by substantial record evidence and constitutes a compelling reason for rejecting plaintiff's testimony.

I conclude that the above reasons, taken together, constitute clear and convincing reasons for rejecting plaintiff's testimony.

The ALJ did not err in discrediting plaintiff's subjective symptom testimony.

## II.  <u>**Rejection of Medical Testimony**</u>

Plaintiff next argues that the ALJ erred in failing to fully incorporate the limitations described by Drs. McKenna and Boyd into the RFC.   The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician.  <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995).  Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record.  <u>Id.</u>  "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  <u>Chaudhry v. Astrue</u>, 688 F.3d 661, 671 (9th Cir. 2012) (quoting <u>Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228 (9th Cir. 2009)).  "'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'"  <u>Id.</u> (quoting <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003)).   The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC.  <u>See</u> <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008).  Ultimately, the RFC is sufficient if

it is "consistent with restrictions identified in the medical testimony." Id.

The ALJ credited the opinions of both Drs. Boyd and McKenna, and stated that the RFC was supported by both opinions. Plaintiff argues that the ALJ omitted limitations identified by both psychologists.

**A.   Dr. McKenna**

Dr. McKenna examined plaintiff and submitted a thorough evaluation. Tr. 261-69. At the end of the section entitled "Clinical Formulation/Prognosis," Dr. McKenna concluded the following:

> At this time the primary impediments to returning this evaluee to full-time gainful employment are her severe social anxiety, unusual beliefs and perceptions, limited verbal and working memory, and poor mental organization. She is independent for all activities of daily living, and continues to manage her own affairs with little difficulty. Her deficits are primarily social and cognitive. With appropriate placement in training or employment, she is a good candidate to return to work. However, it should be noted that her unusual beliefs, strong interests in only a few areas, and occasionally odd reasoning may make it hard for her to engage with some types of training programs. She also may struggle to overcome her social anxiety enough to build good working relationships with case managers, instructors, or therapists.

Tr. 268. In the next section, entitled "Treatment Recommendations," Dr. McKenna outlined many recommended treatment options irrelevant to present functional limitations, but also made workplace recommendations:

14 - OPINION AND ORDER

11.  She should avoid positions that require a great deal of math.
12.  She should write down information to be remembered later. She should use "cheat sheets" for regularly used information such as codes, numbers, definitions, etc.
13.  She should inform her instructors and supervisors that she requires information to be repeated to be recalled best.
14.  She should use memory compensatories such as post-it notes, reminder phone calls, address books, calendars, etc. to remember information. She may wish to record instructions/important information for later review.
15.  She should have information both explained verbally and provided in written form.

* * *

18.  She should seek positions that limit customer or public contact.

Tr. 269.

In the RFC, the ALJ limited plaintiff to performing one- to two-step tasks with no public contact, no teamwork, and limited coworker contact. Tr. 25. Plaintiff argues that these limitations in the RFC fail to adequately incorporate some of Dr. McKenna's recommendations. Because I conclude that the ALJ reasonably translated the functional limitations described by Dr. McKenna into the RFC, I disagree.

In incorporating functional limitations from a medical opinion into the RFC, an ALJ may rely on specific imperatives rather than recommendations. See Carmickle v. Comm'r Soc. Sec. Admin, 533 F.3d 1155, 1165 (9th Cir. 2008). The limitations in the RFC adequately accommodate the limitations found in Dr. McKenna's concluding paragraph of the Clinical Formulation/Prognosis section. The

limitation to one- or two-step tasks reasonably accommodates plaintiff's memory and mental organization limitations. The limitation to no public contact, no teamwork, and limited coworker contact adequately accommodates plaintiff's social limitations. The ALJ's reliance on the imperatives in the "Clinical Formulation/Prognosis" section in fashioning the RFC was reasonable. See Carmickle, 533 F.3d at 1165.

Nonetheless, I conclude that Dr. McKenna's recommendations are also adequately accounted for in the RFC. The recommendations regarding the use of cheat sheets, reminders, and post-it notes, for example, merely go to the aforementioned memory limitations which the ALJ reasonably accounted for by limiting plaintiff to one- to two-step tasks. Additionally, I note that many of the recommendations in Dr. McKenna's opinion, such as the use of post-it notes or cheat sheets, are commonly available in the workplace. In sum, I find that the ALJ appropriately translated the medical conditions found by Dr. McKenna into functional limitations in the RFC, and the RFC is therefore consistent with the medical testimony. See Stubbs-Danielson, 539 F.3d at 1174. The ALJ did not reject Dr. McKenna's opinion.

### B.   Dr. Boyd

Dr. Boyd reviewed plaintiff's records and completed a Mental Residual Functional Capacity Assessment (MRFC). In Section III of the MRFC, Dr. Boyd found:

AB    The [claimant] would not be significantly limited
      in understanding/memory or sustained concentration
      or pace for simple tasks. [Claimant's] severe
      social anxiety would likely interfere [with] her
      consistently carrying out more detailed tasks. The
      [claimant] should not work closely with or in
      coordination with coworkers.

C     The [claimant] should avoid engaging the public.
      Interactions should be limited to very brief and
      infrequent contact due to [medically determinable
      impairments].

D     The [claimant] occasionally may need help to set
      realistic goals.

Tr. 305. Plaintiff, for good reason, does not argue that the ALJ

failed to incorporate these limitations in the RFC. Rather,

plaintiff argues that the ALJ failed to include limitations

described in boxes checked in Section I of the MRFC worksheet.

The Ninth Circuit Court of Appeals, however, found this

argument "strained" in Israel v. Astrue. 494 Fed.Appx. 794, 2012

WL 4845578, at *3 (9th Cir. Oct. 12, 2012). The Ninth Circuit

cited the Social Security Administration's Program Operations

Manual System (POMS) for its explanation that "Section I is 'merely

a worksheet . . . and does not constitute the RFC assessment.'

Instead, '[i]t is the narrative written by the psychiatrist or

psychologist in [S]ection III . . . that adjudicators are to use as

the assessment of RFC.'" Id. at *2 n.1 (emphasis and internal

citations omitted).[2]   Thus, the ALJ need not incorporate every

---

[2] Plaintiff's argument that I should ignore the POMS because
it does not carry the force of law misses the mark. Like the
Ninth Circuit in Israel, I find the POMS persuasive in this
instance.

17 - OPINION AND ORDER

checked box in Section I into the ultimate RFC. The ALJ did not reject Dr. Boyd's opinion because the RFC "adequately capture[d]" the limitations described therein. See Israel, 2012 WL 4845578, at *3 (quoting Stubbs-Danielson, 539 F.3d at 1174). Because the RFC adequately captured the findings of Drs. Boyd and McKenna, the ALJ did not erroneously reject their opinions.

### III. Exclusion of Fibromyalgia at Step Two

Plaintiff argues that the ALJ erred in excluding fibromyalgia as a severe medically determinable impairment at Step Two because the ALJ failed to fulfill his duty to develop the record. In social security cases, the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288). "This duty extends to the represented as well as to the unrepresented claimant," but the ALJ must be "especially diligent" where the claimant is unrepresented. Id. The duty to develop the record is triggered where the record contains ambiguous evidence or the ALJ finds the record is inadequate to allow for a proper evaluation of the evidence. Id. "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id.

Plaintiff argues that the medical record was ambiguous as to the medical determinability of her fibromyalgia diagnosis, so as to trigger the ALJ's duty to develop the record. Generally, to be medically determinable, an impairment must be "'demonstrable by medically acceptable clinical and laboratory diagnostic techniques.'" Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)) (emphasis omitted). As such, an impairment is only medically determinable "if the record includes signs - the results of 'medically acceptable clinical diagnostic techniques,' such as tests - as well as symptoms, i.e., [the plaintiff's] representations regarding [her] impairment." Id. With respect to fibromyalgia, the American College of Rheumatology (ACR) lists the diagnostic criteria as "patient reports of pain when at least 11 of 18 points cause pain when palpated by the examiner's thumb." Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004), overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 969 (9th Cir. 2006); Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001).

In this case, an undated,[3] unsigned chart note constitutes the only record with any reference to the diagnostic findings for fibromyalgia. Tr. 310. In the chart note, the unnamed provider

---

[3] Although the record lists the "Encounter Date" as March 23, 2009, that date similarly appears on chart notes dated, among others, April 24 and August 3, 2009. Tr. 310-12.

referenced "multiple [t]ender points on exam" and listed fibromyalgia under the section entitled "Assessment/Plan." Tr. 310. Robert Henriques, M.D., noted fibromyalgia in treatment notes dated April 13 and May 13, 2010, but did not make any diagnositc findings. Tr. 324-35.

The record before the ALJ was insufficient to qualify fibromyalgia as a medically determinable impairment because there was no unambiguous indication that plaintiff met the relevant "medically acceptable clinical diagnostic technique," *i.e.*, the ACR's criteria of 11 out of 18 tender points. Rather, the record merely mentions "multiple" tender points. Tr. 310. Plaintiff argues that this evidence was sufficiently ambiguous to trigger the ALJ's duty to further develop the record, and that the ALJ failed to do so.

I agree with plaintiff that this is the sort of ambiguous evidence that triggers the ALJ's duty to further develop the record. I conclude, however, that the ALJ fulfilled this duty by leaving the record open for two weeks after the hearing.

Plaintiff was represented by counsel at the hearing. Plaintiff's counsel questioned plaintiff about her fibromyalgia diagnosis. Tr. 58-61. In the midst of a discussion between plaintiff's counsel, the ALJ, and the medical expert at the hearing, plaintiff's counsel acknowledged the diagnostic ambiguity in the record concerning fibromyalgia, saying "I'm the one, I

think, brought up the idea the fibromyalgia shows up in the middle [of the record], and if you go back and try to find it's [sic] origin, and it's very difficult to do." Tr. 72. The ALJ left the record open for two weeks after the hearing. Tr. 81. Although the record was left open for the stated purpose of obtaining additional therapy records from LifeWorks NW, there is no indication it was exclusively limited to that purpose.

I hold that the ALJ discharged his duty to further develop the record as to the ambiguity regarding the fibromyalgia diagnosis because plaintiff was represented by counsel at the hearing, plaintiff's counsel acknowledged the record's ambiguity as to the fibromyalgia diagnosis, and the ALJ kept the record open for an additional two weeks after the hearing. See Tonapetyan, 242 F.3d at 1150 (recognizing that an ALJ discharges the duty to develop the record by keeping the record open after the hearing). Simply put, plaintiff's counsel knew of an ambiguity in the record, and had an opportunity to clarify that ambiguity, but failed to do so. This is not a circumstance where the ALJ failed to fully develop the record, but rather an instance in which plaintiff failed to carry her burden. Because the record did not contain documentation of the requisite findings to diagnose fibromyalgia, the ALJ did not err by excluding it at Step Two.

///

///

## IV.  **Rejection of Lay Witness Testimony**

Plaintiff next argues that the ALJ cited legally insufficient reasons for partially rejecting the lay witness statements of plaintiff's roommate, Gavin Lipscomb, and her social security claim representative, Gary Davidson.    Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).    To discount lay witness testimony, the ALJ must give reasons that are germane to the witness.    Id.

### A.    **Mr. Lipscomb**

Mr. Lipscomb submitted a Third Party Function Report listing limitations that largely mirrored those described by plaintiff. Tr. 182-89.    In the "Remarks" section on the last page of the Function Report, Mr. Lipscomb noted that plaintiff "[s]ees no reason to want to work." Tr. 189.    The ALJ accepted Mr. Lipscomb's statements as descriptive of his perception of plaintiff's limitations, but ultimately concluded that it did not change the RFC because Mr. Lipscomb's statement that plaintiff "sees no reason to want to work," was indicative of secondary gain motives rather than an actual inability to work.    Tr. 189.    I conclude that this is a sufficient reason to discredit Mr. Lipscomb's testimony.    The ALJ reasonably interpreted Mr. Lipscomb's statement as suggesting

plaintiff's lack of employment was elective rather than caused by disability.

**B.   Mr. Davidson**

Mr. Davidson was plaintiff's appointed representative for the purpose of filling out disability documents and gathering evidence. Tr. 85.  Mr. Davidson made a statement of his personal opinion in a portion of a Disability Report he filled out and submitted on plaintiff's behalf.  Tr. 206.  Mr. Davidson opined, in full:

> I have been working with Ms. Rounds for several months.
> It is difficult to work with her because of her memory
> problems.  she need to be going to mental health we are
> working on this.  She is currently is not able to be
> employed.  we are working on getting her what she needs.
> It will clearly take more then a year to possible get her
> where she might work in something other then a sheltered
> work shop[.]

Tr. 206 (errors in original).  In his decision, the ALJ did not address Mr. Davidson's opinion.

As an initial matter, I question whether the opinion of a claimant's disability representative is competent "lay testimony" that the ALJ must address in the disability determination.  Even if Mr. Davidson's opinion is competent lay testimony, however, the ALJ's error in failing to address it is harmless.  The vast majority of Mr. Davidson's statement flatly opines that plaintiff is disabled.  Such a determination is a legal conclusion reserved to the Commissioner.  See <u>Tonapetyan</u>, 242 F.3d at 1148.  The only other symptom or functional limitation Mr. Davidson notes is his

reference to difficulty working with plaintiff caused by "memory problems." Tr. 206. Because this vague reference is no more limiting than any other reference to memory limitations in the record, the ALJ adequately accounted for it by limiting plaintiff to one- to two-step tasks in the RFC. Thus, any error in the failure to comment on Mr. Davidson's opinion was harmless because it was "inconsequential to the ultimate disability determination." See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

## V.   Step Five Finding

Finally, plaintiff argues that the Commissioner failed to carry her burden at Step Five because the vocational hypothetical did not capture all of plaintiff's limitations and because the jobs identified by the ALJ are not supported by the RFC. When an ALJ finds that the claimant's impairments preclude him from performing past relevant work, the burden shifts to the Commissioner at Step Five to show that the claimant can perform other work that exists in significant numbers in the national economy. Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner can meet this burden by having a vocational expert testify at the hearing based on a vocational hypothetical. Id. (quoting Tackett, 180 F.3d at 1101). A vocational hypothetical is sufficient if it includes all of the claimant's limitations that are supported by substantial evidence in the record. See Bayliss

v. Barnhart, 427 F.3d 1211, 1217–18 (9th Cir. 2005). An ALJ may exclude limitations unsupported by substantial evidence in the record. Id.

In this case, the vocational hypothetical contained all of the limitations the ALJ found were supported by substantial evidence. For the reasons discussed above, I conclude that the RFC is supported by substantial evidence. Thus, the vocational hypothetical was adequate.

Plaintiff finally argues that the jobs identified by the ALJ are not supported by the RFC because they each require a General Educational Development (GED) Level Two, as defined in the Dictionary of Occupational Titles (DOT). Plaintiff asserts, without citation to authority, that GED Level Two's requirement that the claimant be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," is necessarily inconsistent with the RFC's restriction of plaintiff to "one- or two-step tasks."

There is no binding authority on this issue, and district courts within the Ninth Circuit are split as to whether a limitation to "one- to two-step tasks" in the RFC is consistent with bring able to "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions" at GED Level Two. See Gonzalez v. Colvin, No. 1:10-cv-01330-SKO, 2013 WL 1003631, at *4 (E.D. Cal. Mar. 13, 2013) (noting the lack of

binding authority and citing cases reaching different conclusions on this question).  The issue in this instance, however, is whether the ALJ was entitled to rely on the VE's expert testimony that the plaintiff, pursuant to the RFC adequately described by the ALJ, could perform jobs that required GED Level Two.  If the ALJ's reliance on the VE's testimony was supported by substantial evidence, then, I must find that the ALJ carried his burden at Step Five.  See 42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039.  The substantial evidence standard does not require absolute certainty, but rather it must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.

Here, a reasonable mind could accept the VE's testimony as adequate to support the conclusion that plaintiff can perform other work that exists in significant numbers in the national economy. I find that the VE's testimony that the RFC, including the limitation to one- to two-step tasks, was consistent with jobs that required a GED Level Two was at least arguably correct.  In this case, there was no allegation that plaintiff had any intellectual limitations or lacked the ability to understand instructions. Rather, the one- to two-step task limitation dealt primarily with plaintiff's memory limitations.  Thus, the VE's implicit conclusion that plaintiff could "[a]pply *commonsense understanding* to carry

out detailed but uninvolved" instructions is not necessarily inconsistent with plaintiff's limitation to one- to two-step tasks.

The ALJ, then, could reasonably rely on the VE's expert testimony that plaintiff could perform the jobs he described. Therefore, the ALJ was entitled to rely on the VE's testimony in determining that plaintiff can perform other work that exists in significant numbers in the national economy. See Lockwood, 616 F.3d at 1071.

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this **24** day of April, 2013.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge